UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

ALAN GRESHAM,

        Plaintiff,                Case No. 1:09-cv-11

v.                                    Honorable Paul L. Maloney

JENNIFER J. GRANHOLM et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff Alan Gresham presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Richard A. Handlon Correctional Facility. He sues Governor Jennifer M. Granholm and MDOC Director Patricia Caruso.

Plaintiff's allegations are set forth in their entirety, verbatim:

> I do believe that goveror Mrs. Granholm and the Dictator Mrs. Caruso M.D.O.C. are being prejudiced against people who somke and I also believe that they are being prejudiced against my religon. Witch my religion is clacca witch is witchcraft. I ferther believe that they are bing prejudiced me being a somker.
>
> Under the Frist Amendment it states that all Americas have rights to freedom of religion and it also state that we can have anything that gos with our religion And under Constutioal Bill of Rights it also states that we have the freedom of choice if we what to somke or not to smoke.
>
> I also be giving you a copy of my grievance dated 8/20/08.

(Compl. at 4.) In his grievance, Plaintiff made the following allegations (verbatim):

> The Frist amendme states that all America's have Freedom of Religion no matter what the religion. Witch my religion is white witch-craft witch in this religion states that no on gvernment offices or state offices and I do believe that goveror Granholme and Director Partricia Caruso of M.D.O.C. are trying to take my reliegion and they also are being prejudice aganest people who smoke. and yes my religion I'm allowed to smoke and practice my beliefs and CIVIL matter.

(Att. 1 to Compl., docket #1-2.)

For relief, Plaintiff seeks the following (verbatim):

> I would like the Court to make goveror Mrs. Granholm and the dictator of M.D.O.C. Realize that they have prisonrs who are doing life and they also have prisonrs who are not doin life in prison and there are a lot more of smokers in prison then there is none smokers. Becouse under the US Contution is the frist amendment that stats we all have the right to smoke.

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Although his allegations are confusing, Plaintiff appears to allege that his First Amendment right to practice his religion of white witchcraft is impaired by the MDOC's ban on smoking. In addition, he appears to allege that he is being denied equal protection of the laws because he smokes.

Finally, the complaint arguably raises a claim that the MDOC's prohibition on smoking violates the Eighth Amendment.

### A. First Amendment

Although "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment right to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that his First Amendment right under the Free Exercise Clause has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials").

Plaintiff's allegations fail to set forth a First Amendment claim. Plaintiff makes no allegations about the manner in which his religious beliefs are being infringed by Defendants. Plaintiff complains only that he is a white witch and that he is being denied the right to smoke cigarettes. The allegations contained in Plaintiff's grievance state only that his religion permits smoking. He at no time, however, alleges that smoking is a religious practice within his own scheme of belief. Nor does he allege that his belief is sincerely held.

Further, even if he had alleged that smoking was part of his sincerely held religious beliefs, he fails to establish a First Amendment violation. While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483

(quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).  These factors are not necessarily weighed evenly, but rather they are guidelines for the court to assess whether the prison officials' actions are reasonably related to a valid penological basis.  *See Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999).  Moreover, as continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts.  *See Washintgon v. Harper*, 494 U.S. 210, 224 (1990); *Turner*, 482 U.S. at 84-96; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125-126 (1977).  These concerns are even stronger when a state penal institution is involved.  *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998).

The MDOC's ban on cigarette smoking unquestionably has a legitimate penological purpose.  Prison officials have a legitimate penological interest in safeguarding the health of the many prisoners who resided in close quarters, a significant number of whom have physical problems caused or aggravated by cigarette smoking.  *See Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998)

(protecting the health and safety of inmates and staff by providing a clean air environment constitutes a legitimate objective of a prison system).  Other interests include reducing fire hazards, maintaining clean and sanitary facilities, and reducing complaints and the threat of litigation from inmates who do not smoke.  *See Girodano v. Conn. Valley Hosp.*, 588 F. Supp. 2d 306, 324 (D. Conn. 2008) (listing legitimate governmental interests); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that a prisoner's allegation of exposure to secondhand smoke may state a cause of action under the Eighth Amendment).  The first *Turner* prong therefore is clearly met.

With respect to the second *Turner* factor, Plaintiff alleges no other way in which his religious beliefs are impaired.  He therefore unquestionably retains other methods of practicing his religion.

The third and fourth *Turner* factors also cut against Plaintiff's claim.  Allowing selected prisoners to smoke cigarettes unquestionably would interfere with the prison's ability to protect the health of the remaining prisoners.  In addition, such a practice would undermine prison discipline significantly, given the number of other prisoners who are denied the ability to smoke. Further, staff would be unable to quickly locate violators of the policy if smoking were permitted by a few.  In light of these considerations, no easy alternative presents itself that would accommodate Plaintiff's claims at de minimis cost to the penological interests of the institutions.

Finally, the Court notes that, in the context of individuals who are not incarcerated, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes conduct that his religion prescribes (or proscribes).'"  *Employment Div., Dept. of Hum. Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (upholding against a free exercise challenge a state law of general

applicability criminalizing peyote use) (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982)). *See also City of Boerne v. Flores*, 521 U.S. 507 (1997) (holding unconstitutional the Religious Freedom Restoration Act to the extent the Act attempted to overrule *Smith*, 494 U.S. 872). Applying the *Smith* rule here, the prison smoking ban unquestionably is a rule of general applicability, banning smoking in all of its facilities. The rule is valid and neutral in the conduct it proscribes. *Smith*, 494 U.S. at 879. As a result, even had Plaintiff asserted that within his sincerely held belief system smoking was a religious practice, he nevertheless would fail to state a valid First Amendment claim.

### B. Equal Protection

Plaintiff next appears to allege that he is being discriminated against on the basis of his smoking. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Petitioner does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to smoke under the Constitution. *Webber*, 158 F.3d at 461; *Muff v. Collins*, No. 2:08-cv-1027, 2009 WL 233561, at *2 (S.D. Ohio Jan. 29, 2009); *Giordano*, 588 F. Supp. 2d at 314; *Thiel v. Nelson*, 422 F. Supp. 2d 1024, 1030 (W.D. Wisc. 2006).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a

constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).

Plaintiff fails to allege that the government lacks a rational basis for banning smoking. As previously discussed, the MDOC has multiple legitimate governmental interests in banning smoking. *Webber*, 158 F.3d at 461; *Giordano*, 588 F. Supp. 2d at 314. Plaintiff therefore fails to state an equal protection claim.

### C.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

A prohibition on smoking is not the sort of deprivation barred by the Eighth Amendment. *See Muff*, 2009 WL 233561, at *4; *Reynolds v. Bucks*, 833 F. Supp. 518, 520 (E.D. Pa. 1993) (prison smoking ban does not violate Eighth Amendment given widely recognized health hazards associated with cigarettes); *cf Helling*, 509 U.S. at 35 (recognizing the possibility of an

Eighth Amendment claim by prisoners exposed to second-hand smoke). Plaintiff therefore fails to state an Eighth Amendment claim.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  February 25, 2009              /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       Chief United States District Judge